The next case called on the docket is 514-0175, White v. Beelman River Terminals, Inc. Mr. Barron, welcome. Good morning. May it please the Court. My name is Lee Barron. I'm here with Craig Jetson at the table with me. This case is unique in that we have a dispute over a little more than a quarter million dollars worth of attorney's fees, $258,000 worth of attorney's fees that were adjudicated by the trial judge. I use the term adjudicated loosely here because there was no sworn testimony, no cross-examination, no offering of exhibits. The rules of evidence didn't appear at this adjudication. The case settled, the Jesse White case settled in November. In order to get Jesse his money, the case had been around since 07, we're in 2013, so in order to get Mr. White his money, Mr. Jetson attempted to work out something. When he couldn't do that, he filed a petition. The purpose of that hearing in December was to release the funds to Jesse White. The Court and the parties all showed up, and it's clear from the record that the parties showed up thinking that this was going to be a preliminary proceeding. The purpose was to get the money to Mr. White, and then there would be discovery, and that's in Mr. Schmieder's motions, and that's in Mr. Jetson, or Meyer Jetson, in their motions. And so the Court offers, you know, asks the parties, well, let's do some opening statements. And there was never anything more than opening statements. Mr. Jetson made some comments, and Mr. Schmieder made some comments. And what's remarkable in the record, as it goes back and forth, and unfortunately, it was heated, and there were some accusations by Mr. Schmieder that Mr. Jetson wasn't being truthful. There was counter-suggestions that Mr. Schmieder wasn't being truthful. Well, we have a tool for how to deal with issues when people, you know, say we're not being truthful. We have cross-examination. We have sworn testimony. We have the rules of evidence. But were there specific objections to proceeding in the way that the Court did? I mean, did anybody say, wait a minute, Judge, I want to put on evidence, for example? Mr. Jetson made that very specifically. He didn't even reference to wanting to put on evidence. He did. So we have the record. And then, all of a sudden, at page 27 of the transcript, in the record, page 171, the Court asks, the one-third attorney fees is $258,000, Mr. Jetson says, of the gross amount, yes, Your Honor. And then the Court turns to Mr. Schmieder and says, is that what it is? And Mr. Schmieder says, yes. And Mr. Jetson then says, may I? And the Court cuts him off. Hold on a moment. We keep doing this. You're saying they deserve $51,600, Mr. Schmieder. And Mr. Schmieder says, what I'm saying is, I think we at least, yes, I'm saying that. And I can deal with that. And then the Court goes, I'm going to rule right now from the bench that the plaintiff gets $51,600. Which happens to be 20% of the fee. Is that right? That was the amount that they suggested. But it comes out of 20%, 15%, 25%, 50%. I mean, what's the basis here? I'm not saying that's good or bad. I'm just saying mathematically, 51,600 is 20% of $258,000. I'll verify that. Okay. I like that argument. All right. Mr. Barron, let me ask you this. I was curious. I think you're right. The judge did, I saw that. They cut your client off. They cut the client off. And yet, there's some hint in the record about your client having a contract for 11% on this case. Yes, that's exactly a hint. And that would be, if the record was developed, you would be able to see that there was an agreement while he was in an of-counsel arrangement to have an 11%. And that's Craig Jensen, of-counsel to the Schmieder-Laken Law Firm. But then, in March of 2013, that relationship turns. And then, Mr. White is quite appropriately given his option. And the record, we do have this in here, the letter in here that Craig sent to Mr. White. And he gave him three options. Right. Following the ARDC guidelines perfectly. They claim that they pushed Mr. White. There's no evidence of that at all. So, you can stay with them. And the letter's actually quite professional. The original contract, though, in the briefs that were filed, it's not clear to me whether Mr. White signed the contract with the Laken Firm or whether it was with Mr. Jensen. I think Mr. Jensen seems to say it was with me, but I was with the Laken Firm. And Mr. Laken's brief says it's the Laken Firm. He was our employee. The first contract, yes. The first contract that was actually signed in 2011, 2-17-2011, that's the first time they have a contract. And that is with Jesse White, with the Schmieder-Laken Firm, whatever kind of name they go under at that time. That that was, that's right. And he was their employee. He's not seeking fees for that period of time. Well, is he seeking fees for the period of time he was of counsel? No. He's seeking fees, and he's entitled to fees. There's only one party here that had a contract with Mr. White when the case settled. That's the Meyer-Jensen Law Firm. It's not even Craig Jensen. It's the Meyer-Jensen Law Firm. So the prior contract doesn't apply because that's the out-counsel agreement between Craig Jensen and the Schmieder-Laken Firm. But all that disappears once Mr. White exercises his right, as he's entitled to, to pick his attorney. And then he signs a contract with a different entity, the entity Meyer-Jensen Law Firm. That's the agreement, and that's the only contingency agreement that's in effect when the case settles. The case settled, though, just months after the contract was signed with Mr. Jensen, right? March to November? Right. It was, yes, it was settled. He signed the contract in March, and in November 8th is when the settlement contract. And that is exactly the type of issue, and I think if I can anticipate, and if I'm wrong, tell me I'm wrong, if I can anticipate where the question's going, the question is, what happened during that period of March and November? Right. Chris? That is my question. And that is exactly the appropriate question. Yes, thank you. I wish we could get into the development. Just kidding. So is Mr. Jensen then seeking his quantum merit for what work he did for those months? No, he has a contract. He is entitled to the contingency agreement that he has with the client. The party that is entitled under Illinois law to quantum merit would be the Schmieder-Lagan Law Firm. They're entitled to quantum merit. He's entitled to the contract that he has with Mr. White. I mean, part of your argument here is, as I understand it, that the trial court got this backwards. Yes. The trial court should have honored the pending contingent fee contract with Meijer-Jensen and then determined quantum merit for the Lagan Firm. Maybe he would have ended up with the same numbers, but it should have been done that way is what you're arguing. And evidence should have been presented, and it's their burden of proof on that issue. All the case law sentences, it's their burden of proof. And there's some interesting reference to that Baker case, the Fifth District Baker case on attorney's fees, and it's just entertaining for me to read that and see who was called as witnesses. I mean, William B. is called as a witness in that case. Bruce Cook is called an expert witness in that case. I think I referred to it as a who's who of a Lance Barb, and that's how you prove up cases. You don't have 15 minutes of argument, and then the court just sort of pulls the plug and says, here's what I'm going to do, and then for Mr. Schmieder to represent to the court later on the motion to reconsider and to represent to this court that evidence was presented. That's not evidence. We have rules of evidence. Witnesses are called, they're sworn, and I can't pull the quote out of it directly, but cross-examination is the greatest truth-telling, truth-finding tool that we have. And if they're disagreeing, and unfortunately there's clearly some rancor. You can't read that transcript without knowing that unfortunately there's some rancor. Both parties are representing themselves, which violates another rule that we're all familiar with, and that doesn't help. And therefore, the way we resolve that is we have a trial. We do discovery. Both parties ask for discovery. They ask for discovery. Craig asks for discovery. We get ready for trial, and we do cross-examination. We find out where the truth lies. We find out how much time they put in. They meet their burden of proof to show how much time they put into this case because that's the quantum of merit. None of that's in the record. And they also get the benefit of whatever time Mr. Jensen put into it when he was working there, right? And I agree with that. And even during the period of time that he was up counsel, they could bill for them. Now, their objection to that is, you know, he's going to be disingenuous. He's going to minimize his time. I can anticipate that argument. That argument was made in the record. That's fine. They've got records. Well, typically in a contingency fee contract, especially a Jones Act or an FALA, time records are not kept. It puts a plaintiff's firm at a disadvantage. I mean, being an employment lawyer, you're very used to keeping records. Do the tenth of a minute of it. You're saying they're reading my mind. You're scaring me. Yes. It would be a good practice for all plaintiff's firms to do this. Yes, it would. But the reality is plaintiff's firms who do Jones Act and FALA or whatever don't really do or anticipate a lodestar argument. And that's absolutely true. And so then they can come in and they can go through their pleadings and file a motion for summary judgment. Here it is. Here we estimate it took this much time. We sent discoveries. We estimate it took this much time. We filed an amended complaint. We estimate it did this much time. That can be done. There has to be, just like the Baker case, they came in and they developed the record. And that's their burden. They have to develop that record. Tell us something about their jurisdictional argument. Yes. Okay. Craig filed the notice of appeal. It complies in every aspect with Rule 303. Well, it names White as the appellant though, right? Right. And Rule 303 says you have to do that. Rule 303 says that the notice of appeal must list the parties in the same way that they are listed in the trial court. And two things. One, we think Jesse White does have an interest and is an appropriate party to the appeal. He has an interest under the Illinois rules to choose his own attorney. And he has an interest to see that the attorney that he selected is paid. Secondly, in the case law, they cite that Nussbaum case. The Nussbaum case goes exactly the opposite way. And as long as the notice of appeal complies with Rule 303, jurisdiction is vested in this court. And this type of hyper-technical argument has been rejected on multiple occasions, as we cite in our brief. And what's interesting to me is in no place do they claim any remote prejudice. They have no doubt what the issues were. Because what the notice of appeal says is what we're appealing from are the two orders, the December order and the March order. They're on notice what the issues are. They're here. They filed their brief. It's not as if we showed up here with a default. Well, we didn't know because we didn't show up because we didn't know what we were arguing about. They knew right from the get-go, they've known throughout this, exactly what the issues are. Because Craig complied with exactly what 303 requires him to comply with. I think this... I'm sorry. I'm sorry. It seems that the case law, though, that he's even cited, the Toohey case, for example, lists the parties, even though it's an attorney-fee fight. The actual name of the case... I'm sorry, it wasn't the Toohey case. It was De Lapis v. Electability Construction Inc. That was an attorney-fee fight, and yet the names of the parties in the lawsuit were the ones named in the litigation. I think in that case there was a count. I might be wrong on this, but my recollection of reading that case is that there was a complaint for tortious interference with the contract that was part of that. And the other case, as you said, the other case is referred to the parties just as they were at the trial court. Does the lien statute, doesn't the lien statute itself indicate that you have to serve it in the name of the client? I believe it does. I believe that's correct. And on the lien issue, and I want to be clear on this, it's simply their burden of proof, too. Because of the statutory cause of action, the lien statute, they have to prove that they've complied. What we have in the record is an affidavit from somebody at the insurance company or a billing that says, Look, I went through the record, and the only lien that I found is March of 2013, after Layton Chapman was fired. Now, I'm not sure, I wasn't in this case until the appeal, what the record will be once it's fully developed. But those are the type of evidentiary issues that must be developed. And if they can beat that burden, power to them, then we'll move on to the other issues. But that's the reason we have a trial. That's the reason we use the rules of evidence to resolve this. And I think if Schmieder-Layton had gone to the judge, we wouldn't have to be here. If Craig filed a motion to reconsider and said, Judge, I don't know what happened. You were having a bad day. Whatever, you brought the hammer down too soon. We need discovery. They say we need discovery. We need to put on evidence. And if Schmieder-Layton had come forward and said, You know what, Judge? I think Craig's right. We have to put on evidence. Instead, they file a motion that suggests to the judge, You heard evidence. They had an opportunity to present all the evidence they wanted to present. And they push the judge to continue the error that he made. At that point, we're here now. And they're still telling you that there was evidence. And that's just impossible. At that point, we think the proper result is that they've given up their opportunity. This shouldn't be remanded for retrial. That the full fee, the full contract should be awarded to Craig. Because they've put us on the trip here to Mount Vernon. I love coming to Mount Vernon, but, you know, maybe not in this type of weather. But, yes, they've I have to be here. You have to be here. I checked the website last night to see whether or not we were all going to be here. So, I'm not going to be here. You can't be here, but Mr. Jensen received the entire fee. And that's why I think that's probably right. I agree. I think that there typically should be a quantum merit on this. They should have to meet their burden of quantum merit. I agree with that. And that's why So, if the judge makes an error, they should waive their quantum merit? If the judge makes an error, that they continue The judge makes a mistake. And instead of, as an officer of the court, coming to the judge and saying, Judge, you know what, I think we really need to do this covering. You need to hear evidence on this. Instead, they go, yeah, attaboy. Let's, we pulled this one off. Let's hold on to it. And let's do everything we can to hold on to something that we don't deserve. That's at least, that's at least, I think, then they've got to live with that. A lot of the mistakes judges make are at the behest of some attorney. You know. Somebody's making an argument. You're asking me to go. Somebody's making an argument. Right. But alternatively, if you're not persuaded by that, then alternatively it needs to be remanded and there needs to be a full trial on it. Thank you. All right. Thank you, Mr. Baird. Mr. Schneider. May it please the court, I'm Rob Schneider from S.L. Chapman. And I'd like to respond to a couple of things that Mr. Baird has said. First of all, there is evidence in the record. Mr. Jensen filed seven exhibits and submitted his distribution statement to the court at the hearing. Is there any point at which anybody stipulated that end evidence or it was offered and admitted or? Well, I did not object to any of the exhibits that he submitted to the court. With our exhibits, we submitted six exhibits that were attached to the sworn testimony of Brad Lake, an affidavit, which authenticated those exhibits, and they were provided to the court. When we approached the court on that date, the court heard arguments. We were not on the record. The court heard arguments. There was some scuffle back and forth. There was arguments between Brad and Craig. And then he said, after a while, we handed him a copy of our exhibits, the affidavit, some case law that we were referring to, the Wagner and the Lapis cases, and the Rhodes opinion. We then, at that point in time, he said, I've got too long of a line here. You guys go work this out, and if you can't work it out, come back. We went, tried to work it out, came back. So he'd already heard, he'd already been provided with exhibits, with the affidavit. He'd asked questions. We'd argued some of the law. We then came back. So this was a regular motion call. This wasn't a special selling. Correct. This was a regular motion call. And as a matter of fact, I believe it may have been the day or two after Christmas, and for some reason the courthouse was packed. After the courthouse clears, and the judge had this, he also had the court file and the doctor sheet. He then proceeds, and Craig says, I want a court report. He says, that's fine, get a court report. And then we proceed. And you'll see there's examples throughout the argument where Craig is actually testifying. Pages 5 through 7 of the transfer, Craig is actually talking about the work that he did at Meyer Jensen after the fact. He's not under oath. He's not under oath, but he's an officer of the court. And I wasn't objecting. I mean, he's going to say what he's going to say, and we presented our argument. We had, I mean, just as an example, we had, this is a printout, Exhibit F, of our court, our computer records of this file. And the court, this was attached to Mr. Lakin's affidavit, and the court was reviewing this. We were talking about a lot of things. And at some point in time, the court, and that's why this is the second time around that the court's heard a lot of this. And I think that was sort of the, what Mr. Barron is talking about, the court appears to be impatient. I mean, he's heard it all already. There's nothing new coming out of anybody's mouth. And as much as I like to talk, he shut me down as well because none of us were raising anything new. No one ever said, Judge, I have one more piece of evidence, or I need to either state this for the record or take the stand or put somebody on the witness stand. He had all the evidence, and there were certain times, and Mr. Barron characterizes me as accusing Mr. Jensen of things. All I was doing was pointing out that credibility matters because Mr. Jensen had walked into court that morning and said we had no need, period. We get nothing, not. I, and this was off the record the first time around. He made the same argument a little when we were on the record. I then handed the court the lien letters showing that we had submitted valid lien letters during the representation and they were actually signed by Mr. Jensen back in 2011. And this case didn't start in 2011. That was another statement that Mr. Jensen kept arguing. The case actually started back in 2009 because the case was originally filed by Lance Mallon, who then worked out a relationship with us. Charlie assigned the case to Craig, and we went from there. And the court shows that he had reviewed the court file because at one point in time during the hearing, I said, Judge, if you look at the docket sheet, and he cut me off. He goes, I did look, and my point was that Craig said he didn't touch this case until 2011. He had already entered his appearance back in 2010. So the court was taking into account everything that Mr. Jensen had said, whether he was under oath or not. I didn't object. He's an officer of the court. The court had Mr. Lakin's affidavit and all the exhibits attached to it right there on his bench. As a matter of fact, you'll see in the record there's an actual extra copy in the record of Mr. Lakin's affidavit with all the exhibits. That's because that was the court's courtesy copy. Then he must have handed it to the clerk, and he filed it a second time. And so he did hear evidence. He did hear arguments. Now, as far as my request for discovery, I want to be very clear. I didn't know going into this. I thought the proper thing for the court to do, the court had a couple options here. The court could say, S.L. Chapman, you're going to prove quantum error. Or the case settler, I'm going to file the line of cases that filed the statement in Rhodes, like DeLapez and the Wagner case, that says if a prior firm does much of the work and the case settles shortly thereafter, you reward the whole fee to the predecessor attorneys, and then the subsequent attorneys get quantum error. And I was arguing that's what should apply here, and it avoids the whole hassle of us having to show quantum error of us conducting discovery, going down that line. We should disperse the funds, because if we couldn't, this case had been dragging on for, we'd been involved for 46 months approximately. And depending upon how many hours and there was quite a bit of work done, the court may not have been able to disperse any funds to the plaintiff if he was going to award us based on quantum error, because until we figure out what that mean amount is, we're not captive to the contingency. But if he files the Wagner, DeLapez line of cases, we're captive to the contingency. And then out of that comes whatever Meyer Jensen proves on a quantum error basis. He elected to go with that approach. Yes, I encouraged him to go to that approach. I think it was appropriate. I don't think it's an abuse of discretion. The case didn't settle in November. The case settled in September. And it settled in September after it had set for mediation in March. While we were representing Mr. White, the mediation was canceled. Mr. Jensen acted as a counsel to us, agreed to continue the trial date until the fall. Then he sent out a selection letter. Now, complicating this whole matter, and I hate this because I don't like arguments between attorneys, but we had an arbitration with Mr. Jensen because he breached his up-counsel agreement with us. He was paid a set amount of money to finish a bunch of cases, including this one. The arbitrator found he breached his agreement with us. That arbitration award came down in October. We didn't find out about this settlement until a little later. And so we had that going on. Was that introduced before judgment fell in? It was. It wasn't argued, but was the old. I haven't seen the arbitration award. No, we had it with us. I don't know. We certainly didn't put it in his exhibit. We did reference in our pleadings that the court had access to the other file because they had appealed the arbitrator's award, accusing the arbitrator of not paying attention during the arbitration, not following the evidence, and doing a bunch of other things. That was before Judge Prater. And the cause number is referenced in – it was cause number 13L1800. And so we specifically pointed out to Judge Matogian, you know, you need more information about that. However, I was concerned about, gee, we have an arbitration award. I'm not asking this judge to do anything with that arbitration award. I didn't want him exercising jurisdiction over it. That was properly before Judge Prater at that time. But the fact is there was a finding that he breached his agreement. And my whole point in bringing it up to Judge Matogian was I was telling him that the firm's expectation under that agreement with Mr. Jensen was that we would receive 89 percent of the fee. So after considering that, considering the statements of Mr. Jensen, and what transcripts, of course, never show is Judge Matogian told us all to be quiet, and he sat there and he was presumably calculating whatever percentage or, you know, looking over his notes, and he was doing these calculations. And that's when he awarded, he made his findings at that point in time. He decided to file the Wegener and DeLapis cases, which I think is perfectly within his discretion to do. I don't think he couldn't. He didn't abuse his discretion. And at that point in time, the only question before him was how much should Meyer-Jensen receive? And it was their burden, not mine. At that moment, the burden shifts to them to prove their case. Now, quite honestly, what happens at that point in time? I'm the aggrieved party. I'm awarded less than what I think I'm entitled to. I did not appeal it, partly because I can go right back into arbitration. I've already got a judgment. It's racially decoded against Craig that he agrees to the agreement, and I can collect the difference from him if I really wanted to do that. But I didn't appeal. Because you can live with that. Well, I think I can live with that. He clearly didn't want to hear it. He wanted to rule, and he didn't want to hear any more arguments because he could hurt him over and over again at that point in time. I think that was obvious from the record. That was obvious. Right. And at one point in time where Craig pounded his fist on the table and the judge chastised him, and for some reason things were very heated at that point in time. But that doesn't take away from the fact to say that there was no evidence. There's 13, 14 exhibits. There was a sworn testimony of Mr. Lagan. There were the statements on the record by Mr. Jensen. There was this affidavit of Christopher Carr that he was referring to that the defendant wasn't aware of a lien. That's nonsense. What that affidavit says is I am Christopher Carr. I am the new attorney that just was hired, and the only letter I received was this one from Mr. Lagan after they were fired, which all it said was, hey, remember, we have a lien because it was a new attorney. We didn't want it getting lost in translation that we had a proper lien. So we met our burden. We walked into court. We provided the lien letters. Those lien letters were provided during the representation. They were actually signed on behalf of the firm by Mr. Jensen. They stated our interest. We met every single element of asserting a proper lien. And then the court decided to follow the Rhodes statement. It was a couple short months. The only thing in the court file, and this was the other thing, was the only thing that was after we withdrew, the only other thing that happened that was in the court file before the case settled in September, was the filing of an evidence deposition. And we pointed that out to the court. Now the court obviously took into consideration some of the things that Mr. Jensen said about his time and efforts in the case and came up with a decision. And so I think, you know, the question for this court is did the trial court abuse its discretion? Having heard it twice, once off the record and then on the record, I don't think the court can reach that conclusion that no reasonable person would take the view adopted by the trial court in this situation, which is what the standard is. Now as far as the motion to dismiss for lack of standing, obviously the only party appellant is Jesse White. So Jesse White, his contract was enforced. He paid a third of the fee. He wasn't aggrieved in any way. Those funds were dispersed last year immediately after the court issued its ruling. He hasn't been aggrieved in any way. And there's nothing, no injury to any recognizable legal interest. And so he doesn't have standing to assert this. Can you point me to a case that exactly says that, that says just what you said, there's no standing of the plaintiff? Yeah, the plaintiff in this case. I cannot. I cannot. Because all of the cases seem to be brought when there's a dispute, even Rhodes, when there's a dispute. It seems like the plaintiff or the parties to the litigation are really just nominal parties, and perhaps they do have an interest in making sure that their lawyers are paying. Well, I— Well, they're nominal. Perhaps Mr. Barron's on to something there. Yeah, no. No, I don't think so, because they—I don't think they have the right. I mean, we have the lien statute, which dictates that the trial court will adjudicate that lien. But that lien arises out of your employment. Correct. So— Or past employment, right. Some employment. You have to have employment in order to have a lien. Right. So, it seems to me that the clients, whether they're plaintiff or defendant, are really the nominal parties. And I think the lien statute does say that notice has to be given to the client as well, if you look at it. It states that it shall be upon the party against whom their clients may have suits, claims, or causes of action. So, it's not notice to the client. The client obviously receives a copy of the written contract. But all it says, it—and then it says, on petition filed by any attorney or their clients, any court of— That's the part I'm looking for. Right. On the petition filed by the attorney or their clients. So, it seems to be in the alternative. In other words, it's like suing a corporation. The corporation has to be named, but it's a nominal party. I understand what you're saying. I couldn't find a case that exactly says what you say. Well, except— The lawyer has to bring it. How would that happen? Would it be brought—I mean, once the case is dismissed with prejudice because it's been settled, how would—would you open a new MR case? How would you envision that happening if not part of the original case? I'm not saying it can't be part of the original case. What I'm saying is— But you're not a party in the original case. No, but we've had—but once the lien is adjudicated, and if Meijer Jensen is upset with the result, Meijer Jensen, as a party affected by that order, has an appellate right. Their name doesn't appear in the caption on your interview. I mean, most of the—what he's talking about is—it's not on the caption, but had they filed, you know, Meijer Jensen, hereby appeals from this—they would have been identified as a party. So your biggest complaint is that their name is not in the right line on the notice of appeal. Their name's not anywhere on the notice of appeal other than in the signature block. As attorney. As attorney for the plaintiff. And then when we get to the court's docketing statement, it says identify all the appellants. Identify everyone that supposedly has an interest in this appeal, and the only person they identify is Jesse White. So what would you have us do then? Are you saying that we have no jurisdiction? What—yeah, well— Do we have to dismiss? What I'm saying is you have no jurisdiction over Meijer Jensen or any of their claims or how this impacts them. That's what the Nussbaum case talks about. In Nussbaum, the plaintiff actually omitted—actually said defendants, but then said hyphen appellee and only named one of the defendants, and they said we don't have jurisdiction over the other defendants. And so while this court may have jurisdiction over Jesse White, the next question asked to Jesse White then is, well, does he have standing? See, I don't understand why he wouldn't have standing. I mean, this was his injury claim to begin with. He's gone through various attorneys here. You know, why couldn't he appeal to this court and say, I don't like the way the judge divided the attorney's fees? I think Jensen should have got more. Why couldn't he do that? Because the question about standing is whether Jesse White would benefit from any relief grant. Well, he would be more satisfied maybe if the division was different. And so why—I mean— I think that's a—well, I mean, if that's the standard for standing, then this court's going to be troubled by that new definition of standing because if it's just about satisfaction, everybody will always have standing. But— Well, this was his money that's getting divided up. His claim is paid, but then he has obligations with attorneys for a third or whatever that comes out of his money. Right. And why couldn't he say, I think Jensen didn't get enough here? Or why can't he say that he wasn't satisfied with your representation and you got too much? Well, first of all, he never raised any of those issues below. But from a standing point of view, why couldn't he have standing? Well, if he had raised specific issues below that he was advancing to this court, that may be a different issue. But what he—this wasn't—the moment the court enforced the one-third agreement, he paid exactly in attorney's fees what he had agreed to, no more, no less. But his contract for a third was with Mr. Jensen. So the court's enforcement of a third was for you all jointly, right? Correct. That's not what he anticipated when he signed his contract with Mr. Jensen. He anticipated paying Mr. Jensen a third, not paying you all anything. Now, he may have not known the law, obviously, but that was his anticipation. So why can't he feel injured or be injured? Well, I don't— I mean, the court has not interpreted the contract the way he has interpreted it. Well, he's had three contracts, with Mr. Milan, with us, and with Meyer Jensen. I'm not leaving. I'm just— And so those three contracts, you could say that for each one of them. He was agreeing to give a third, a third, and a third. Well, then he'd be—that's 100 percent if you go with that logic. No, we're just talking about standing. No. Which is what you're doing. Thank you for listening to me. Thank you. And I did not announce this this morning, but I had back surgery. And so every once in a while, I stay out, so I'm not leaving. So please don't even think about it. I'm listening, Mr. Graham. Yes, that's fine. That's fine. I've got in my office one of those electronic desks that goes up. Maybe you can figure out how to install it. Yeah, that'd be great. Or maybe a chair would move you up. Don't take that from his time. I'm sorry. Go ahead. The petition, the initial petition about attorney's fees was filed by Craig Jensen on November—I believe it was November 26th. And Mr. Schmieder does acknowledge that on December 27th at the regular docket call, he hands to the judge and he hands to Mr. Schmieder—I mean to Mr. Jensen this entire thing. And this is the evidence that he's talking about. And he's saying that at that hearing, that this entire document runs in the record from 41 to 144, that that somehow Judge Mutojian absorbed all of this and treated it as evidence. But your client also submitted exhibits. He did. On November 26th, he submitted something. But those—when somebody files an affidavit, Brad Lakin files an affidavit. And in some cases, you know, both the parties agree. They say, we're not going to fight about this. Your affidavit's your affidavit. That's okay. Then I think, Justice, as you suggested, it gets stipulated into the record and the judge says, are you objecting in any way to their affidavit? No, Your Honor, we accept their affidavit. Then at that point, it's a stipulation. And that's one of the ways that evidence is created. But simply filed, if we got to a world where whatever somebody attaches to their pleading is evidence and is admissible evidence, the rules of evidence disappear. So Mr. Jensen had no objection. Or he did object. He expected to have a hearing. But did he object to Mr. Schmeier's exhibits? He was handed these. Did he object? He asked to hear evidence. No, he did not ever say, I object to what's attached. He expected. Until the moment the judge ruled, Craig anticipated that we were still in opening statements. He expected that there was going to be a subsequent hearing. There was going to be a discovery. And he would have an opportunity. I hope at that point he would hire him. How would he expect that? It's a motion hearing. And he's got his exhibits and he's got his exhibits. And he's saying, let's continue the case? The purpose of that motion was to get the money to Jesse White. The purpose of that motion was not to resolve finally. How do we know that from the record? Because in Craig Jensen's motion, he asked, put the attorney's fees in escrow. That is exactly the relief he was expecting. Okay, but Mr. Schmeier's motion, I think, went beyond that. Craig saw that motion as it was handed to him at the bar. He didn't have an opportunity to read this or go through this or challenge any of this. To your question, did he object to it, he didn't even see it. He got sandbagged at the hearing when he gets handed this thing and says, here's all of ours. How can he even make an objection at the hearing? And how could the judge base his ruling on this that was handed to him on the morning of the hearing? But then there was a break, right? No, there was a break while the judge was dealing with other things on his document. I assume everybody, not everybody, but the two parties spoke. They tried to resolve the dispute, and they were unable to do that. But the judge is up there dealing with other matters. You heard Mr. Schmeier say to you that the judge paused and said, wait, let me read this. You won't find that in the record. In fact, much of what Mr. Schmeier told you is just not in the record. He was testifying, representing to you certain facts. That's why we have the rules of evidence. And this thing completely deviated from the rules of evidence. It at the very least has to be remanded for the issue to take evidence the way evidence is supposed to be taken. So you want us to tell Judge Matozian that he had evidence before everybody didn't really do it, right? Well, there's a couple things. I don't know that he had evidence before. I think evidence is when affidavits and exhibits are stipulated, but simply just having him pleadings in front of him, and then he ruled. And we don't know. There's no findings of facts. There's no conclusions of law. I was sitting here when you were talking with Ms. Buckley about that. Well, that makes your job easier when the trial judge does findings of facts and conclusions of law, even if they dictate it or something. But there's nothing in this record that tells you what Judge Matozian was thinking, except that we infer he got frustrated with everybody and said, this is over, and this is what we're doing. Okay. And this is over. Thank you. Thank you. That would be perfect. All right, we're going to take a brief recess. This matter, 514-0175, will be taken under advisement and order issued.